## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| EMILY WOOLF, an individual, | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| v. | |
| STONEHENGE OF AMERICAN FORK, L.C., a corporation, | **Case No. 2:25-cv-00684-JCB** |
| **Defendant.** | **Magistrate Judge Jared C. Bennett** |

### BACKGROUND[1]

Plaintiff Emily Woolf's ("Ms. Woolf") original complaint asserted claims under Title VII of the Civil Rights Act of 1964 ("Title VII") for sexual discrimination, hostile work environment, and retaliation.[2] Ms. Woolf also asserted a state-law claim for intentional infliction of emotional distress.[3] In response to Ms. Woolf's complaint, Defendant Stonehenge of American Fork, L.C. ("Stonehenge") moved under Fed. R. Civ. P. 12(b)(6) to dismiss all of Ms. Woolf's claims.[4] The court held a hearing on Stonehenge's motion, at which the court granted the motion in part and denied it in part.[5] Specifically, the court granted Stonehenge's motion with respect to Ms.

---

[1] Under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have consented to Judge Jared C. Bennett conducting all proceedings in this case, including entry of final judgment. ECF No. 11.

[2] ECF No. 1 at ¶¶ 27-42.

[3] *Id*. at ¶¶ 43-48.

[4] ECF No. 12.

[5] ECF No. 25.

Woolf's claims for sexual discrimination, hostile work environment, and intentional infliction of emotional distress.[6] The court dismissed those claims without prejudice and allowed Ms. Woolf to move for leave to amend her complaint within thirty days.[7] The court denied Stonehenge's motion with respect to Ms. Woolf's claim for retaliation.[8]

Ms. Woolf filed a timely motion for leave to amend her complaint.[9] Ms. Woolf's proposed amended complaint reasserts the retaliation claim that survived Stonehenge's motion to dismiss, as well as the three claims that were dismissed without prejudice.[10] Ms. Woolf makes the following factual allegations in her proposed amended complaint to support her claims.

Ms. Woolf began working for Stonehenge on September 1, 2022, as a Registered Nurse Apprentice.[11] On August 16, 2023, Ms. Woolf was promoted to Unit Manager, Wound Care Nurse in Infection Control.[12]

Sometime during her employment with Stonehenge, Ms. Woolf became involved in a romantic relationship with Stonehenge's Maintenance Director, Britt Clark ("Mr. Clark").[13] In September 2024, Ms. Woolf discovered that Mr. Clark was married and, consequently, ended the relationship.[14] The same month, Ms. Woolf learned that Mr. Clark was involved in a romantic

---

[6] ECF No. 26.

[7] *Id.*

[8] *Id.*

[9] ECF No. 28.

[10] ECF No. 28-1 at ¶¶ 77-131.

[11] *Id.* at ¶ 12.

[12] *Id.* at ¶ 13.

[13] *Id.* at ¶ 15.

[14] *Id.* at ¶¶ 16-17.

relationship with one of her supervisors, Brandie Ray ("Ms. Ray"), at the same time Ms. Woolf was involved in a romantic relationship with Mr. Clark.[15] Stonehenge learned the same information around the same time and promptly issued an Employee Disciplinary Action against Mr. Clark.[16]

Soon after Ms. Woolf ended her relationship with Mr. Clark, he began spreading false accusations and rumors at Stonehenge about Ms. Woolf.[17] After hearing those false accusations and rumors, Ms. Woolf's supervisors, including Ms. Ray, ignored, isolated, and stopped communicating with Ms. Woolf.[18] Consequently, in October 2024, Ms. Woolf notified an Administrator at Stonehenge, Kacie Powell Keele ("Ms. Keele)—who supervised and evaluated the work performance of both Ms. Woolf and Mr. Clark—that the conduct of her other supervisors, including Ms. Ray, made it very difficult for Ms. Woolf to do her job.[19] Stonehenge took no action to investigate or address Ms. Woolf's allegations.[20]

While Ms. Woolf was directly reporting to Ms. Ray, and during the time that Mr. Clark was spreading false accusations and rumors at Stonehenge about Ms. Woolf, Ms. Ray continued

---

[15] *Id*. at ¶ 18.

[16] *Id*. at ¶¶ 19-22.

[17] *Id*. at ¶ 23.

[18] *Id*. at ¶ 26.

[19] *Id*. at ¶¶ 28, 112(b).

[20] *Id*. at ¶ 29.

her romantic relationship with Mr. Clark.[21] During that same time, Ms. Ray supervised Ms. Woolf and evaluated Ms. Woolf's work performance.[22]

In October 2024, Ms. Woolf had a conversation with Mr. Clark, during which she informed him that she wanted a civil and professional relationship with him at work but wanted nothing else to do with him.[23] Later the same day, Mr. Clark informed Stonehenge's Human Resources Department that Ms. Woolf had threatened to kill him.[24]

The following day, Ms. Woolf filed written complaints with Stonehenge's Human Resources Department alleging that Mr. Clark was harassing her, retaliating against her, and creating a hostile work environment.[25] Ms. Woolf notified the Human Resources Department that she intended to file a claim with the Utah Labor Commission.[26] Additionally, Ms. Woolf notified the Human Resources Department that Mr. Clark had previously been transferred from another facility to the Stonehenge facility where he was currently working following a romantic relationship with another female employee.[27] Stonehenge investigated Ms. Woolf's complaints and determined that there was insufficient evidence to show that Ms. Woolf had threatened to kill

---

[21] *Id.* at ¶¶ 30-31.

[22] *Id.* at ¶ 32.

[23] *Id.* at ¶¶ 35-36.

[24] *Id.* at ¶ 37.

[25] *Id.* at ¶¶ 38-39.

[26] *Id.* at ¶ 39.

[27] *Id.* at ¶ 40.

Mr. Clark.[28] Nevertheless, Stonehenge "did not retract or correct" Mr. Clark's accusation and "allowed the false accusation to continue circulating among [Stonehenge] employees."[29]

Later in the same day that Ms. Woolf filed her complaints, Stonehenge verbally offered Mr. Clark the options of a reassignment or a transfer to a different Stonehenge facility.[30] Stonehenge notified Mr. Clark that if he did not accept the offer, he would have the option to resign, sign a separation agreement, be paid his paid time off, and have re-hirable status.[31] Stonehenge further notified Mr. Clark that if he did not accept any of those options, Stonehenge would terminate his employment.[32] The same day, Stonehenge offered Ms. Woolf the same options.[33]

The following day, Mr. Clark informed Stonehenge that he could not provide Stonehenge with an answer to the provided offers "'before first telling [Stonehenge] how [he felt] and fighting for [his] current position.'"[34] Mr. Clark acknowledged that the fate of his job was "'ultimately corporate[']s decision,'" but he urged Stonehenge to "'at least consider all the facts.'"[35] Although Stonehenge's employee handbook—which applied to both Ms. Woolf and Mr. Clark—did not provide for an appeal procedure, Stonehenge considered Mr. Clark's

---

[28] *Id*. at ¶ 41.

[29] *Id*. at ¶ 42.

[30] *Id*. at ¶ 43.

[31] *Id*. at ¶ 44.

[32] *Id*. at ¶ 45.

[33] *Id*. at ¶ 47.

[34] *Id*. at ¶ 48.

[35] *Id*. at ¶ 52.

statements as an appeal.[36] Stonehenge's employee handbook also did not provide for a probation

period.[37] Nevertheless, Stonehenge explained in its later-filed Position Statement responding to

Ms. Woolf's complaint with the Utah Anti-Discrimination and Labor Division ("UALD") that

during the pendency of Mr. Clark's appeal, he "'was allowed to continue working'" at the

Stonehenge facility where he was currently working "'under a ninety-day probation period.'"[38]

The day after Mr. Clark contacted Stonehenge, Ms. Woolf did too seeking reconsideration

of Stonehenge's decision regarding her employment and explaining that her schedule at the

Stonehenge facility to which she was to be transferred conflicted with her childcare

responsibilities as a single parent.[39] Several hours later, Stonehenge emailed Ms. Woolf to inform

her that her reconsideration request was denied and that her employment was terminated

"'effective immediately.'"[40] Stonehenge never indicated in its communication with Ms. Woolf

that she was terminated due to poor job performance.[41]

Stonehenge subsequently completed Ms. Woolf's Employment Termination Form, in

which Stonehenge stated that the decision to terminate Ms. Woolf's employment was based on

an investigation into, among other things, "'complaints she filed against co-workers.'"[42]

Stonehenge further stated that Ms. Woolf's employment was terminated because she "'had

---

[36] *Id.* at ¶¶ 53, 112(c).

[37] *Id.* at ¶ 55.

[38] *Id.* at ¶ 54.

[39] *Id.* at ¶ 62.

[40] *Id.* at ¶ 63.

[41] *Id.* at ¶ 64.

[42] *Id.* at ¶ 69.

interpersonal relationships that involved other employees at Stonehenge . . . [,] which led to her actions negatively affecting the work environment at Stonehenge.'"[43] Finally, Stonehenge stated that "'additional information was submitted to the [Stonehenge] Corporate Office regarding [Ms. Woolf]'s primary role in creating the incidents that resulted in the complaints be filed.'"[44] Ms. Woolf's Employment Termination Form does not indicate that Ms. Woolf was terminated due to poor job performance.[45] However, Stonehenge's Position Statement filed with the UALD indicated that Ms. Woolf's employment was terminated because of "'excessive evidence of Ms. Woolf's poor performance and her impact on the morale of her co-workers.'"[46]

As indicated above, and based upon the foregoing factual allegations, Ms. Woolf reasserts in her proposed amended complaint the three claims the court previously dismissed without prejudice: sexual discrimination, hostile work environment, and intentional infliction of emotional distress.[47] Ms. Woolf also reasserts her claim for retaliation.[48] Stonehenge opposes Ms. Woolf's motion, arguing only that the motion should be denied because permitting Ms. Woolf to reassert the three previously dismissed claims would be futile.[49] Because Ms. Woolf's retaliation claim survived Stonehenge's motion to dismiss and, therefore, is properly reasserted, the court addresses only Ms. Woolf's three other claims in the analysis set forth below.

---

[43] *Id*. at ¶ 70.

[44] *Id*. at ¶ 71 (second alteration in original).

[45] *Id*. at ¶ 73.

[46] *Id*. at ¶ 75.

[47] *Id*. at ¶¶ 77-114, 124-131.

[48] *Id*. at ¶¶ 115-123.

[49] ECF No. 29.

### LEGAL STANDARDS

Ms. Woolf's motion for leave to amend her complaint is governed by Fed. R. Civ. P. 15(a)(2), which provides that the court "should freely give leave" to amend pleadings "when justice so requires."[50] However, even under the liberal standard for amending pleadings, "the district court may deny leave to amend where amendment would be futile. A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."[51] "Thus, in evaluating a proposed amendment for futility, the court must apply the same standard it would apply in evaluating a Fed. R. Civ. P. 12(b)(6) motion to dismiss the proposed amended complaint."[52]

When conducting a Rule 12(b)(6) analysis, the court "accept[s] as true the well[-]pleaded factual allegations [in the complaint] and then determine[s] if the plaintiff has provided 'enough facts to state a claim to relief that is plausible on its face.'"[53] In addition to accepting a plaintiff's well-pleaded facts as true, the court "view[s] them in the light most favorable to [the plaintiff] . . . and draw[s] all reasonable inferences from the facts in favor of [the plaintiff]."[54] "Rather than adjudging whether a claim is 'improbable,' 'factual allegations in a complaint must be enough to

---

[50] Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

[51] *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (citation modified).

[52] *Golden v. Mentor Capital, Inc.*, No. 2:15-CV-176-JNP-BCW, 2015 WL 13631247, at *1 (D. Utah Sept. 29, 2015) (citing *Bradley*, 379 F.3d at 901).

[53] *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[54] *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

raise a right to relief above the speculative level.'"[55] "[I]n examining a complaint under Rule 12(b)(6), [the court] disregard[s] conclusory statements and look[s] only to whether the remaining, factual allegations plausibly suggest the defendant is liable."[56]

**ANALYSIS**

Based upon the following analysis, the court grants in part and denies in part Ms. Woolf's motion. Specifically, the court grants her motion as to the proposed claim for (I) sexual discrimination but denies her motion with respect to the proposed claims for (II) hostile work environment and (III) intentional infliction of emotional distress. Each proposed claim is addressed in order below.

## I.   Sexual Discrimination

Because Ms. Woolf's proposed claim for sexual discrimination is plausible, the court grants her motion with respect to that claim. "Title VII makes it unlawful 'to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'"[57] A plaintiff may prove a violation of Title VII either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*.[58]

---

[55] *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555-56) (citation modified).

[56] *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

[57] *Id*. at 1192 (quoting 42 U.S.C. § 2000e-2(a)(1)).

[58] *Id*. (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

"Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption. For example, statements showing an existing policy which itself constitutes discrimination are direct evidence of discrimination."[59] On the other hand, "[s]tatements that require the trier of fact to infer that discrimination was a motivating cause of an employment decision . . . are at most circumstantial evidence of discriminatory intent. Usually, a plaintiff will not have direct evidence of discrimination and will establish her claims through circumstantial evidence."[60]

When a plaintiff relies upon circumstantial evidence to support a Title VII discrimination claim, the three-step analysis under the burden-shifting framework of *McDonnell Douglas Corp.* applies.[61] The plaintiff must first prove a prima facie case of discrimination under Title VII.[62] Once established, "[t]he burden then shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action."[63] If the defendant carries that burden, the plaintiff must "show that the plaintiff's protected status was a determinative factor in the employment decision or that the employer's explanation is pretext."[64]

When considering a Title VII discrimination claim under the Rule 12(b)(6) standard, the court considers only the first step of the *McDonnell Douglas Corp.* framework: "whether a

---

[59] *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1137 (10th Cir. 2024) (citation modified).

[60] *Id.* (citation modified).

[61] *Khalik*, 671 F.3d at 1192.

[62] *Id.*

[63] *Id.*

[64] *Id.*

plaintiff has stated a prima facie case of discrimination under Title VII."[65] "While the [Rule 12(b)(6)] standard does not require that [a plaintiff] establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether [she] has set forth a plausible claim."[66] In evaluating whether a Title VII discrimination claim survives a Rule 12(b)(6) analysis, the court "consider[s] whether a plaintiff has set forth a plausible claim in light of the elements of her claim."[67] In general, to state prima facie case of Title VII discrimination under the Rule 12(b)(6) standard, a plaintiff "must plausibly allege these elements: (1) she is a member of a protected class, (2) she suffered an adverse employment action, and (3) the challenged action occurred under circumstances giving rise to an inference of discrimination."[68]

Under the Rule 12(b)(6) standard, "a plaintiff need not conclusively prove a violation of Title VII."[69] Instead, a plaintiff must only "'nudge [her] claims across the line from conceivable to plausible' in order to survive a motion to dismiss."[70] Therefore, under a Rule 12(b)(6) analysis of a Title VII discrimination claim, the court "consider[s] only whether [a plaintiff] has sufficiently stated claims for relief by plausibly alleging either direct evidence of discrimination or a prima facie discrimination claim."[71]

---

[65] *McNellis*, 116 F.4th at 1139 (citation modified).

[66] *Khalik*, 671 F.3d at 1192.

[67] *McNellis*, 116 F.4th at 1139 (citation modified).

[68] *Id.* (citation modified).

[69] *Id.* at 1137 (citation modified).

[70] *Khalik*, 671 F.3d at 1190 (quoting *Twombly*, 550 U.S. at 570).

[71] *McNellis*, 116 F.4th at 1137-38 (citation modified).

Because Ms. Woolf has not alleged any facts that would constitute direct evidence of discrimination, the court considers whether she has plausibly alleged the elements of a prima facie case of a Title VII discrimination claim: "(1) she is a member of a protected class, (2) she suffered an adverse employment action, and (3) the challenged action occurred under circumstances giving rise to an inference of discrimination."[72] Stonehenge does not argue that Ms. Woolf fails to plausibly allege the first two elements, but Stonehenge contends that Ms. Woolf has not plausibly alleged the third element. Accordingly, the court focuses its analysis on that element.

"Alleging the employer treated similarly situated employees more favorably is one method by which a plaintiff can plead circumstances that give rise to an inference of discrimination."[73]

> Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline. In determining whether two employees are similarly situated, a court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees. Moreover, even employees who are similarly situated must have been disciplined for conduct of comparable seriousness in order for their disparate treatment to be relevant.[74]

Ms. Woolf states a plausible claim for sexual discrimination because she has made sufficient factual allegations that give rise to an inference of discrimination. Specifically, Ms.

---

[72] *Id*. at 1139 (citation modified).

[73] *Id*. at 1141 (citation modified); *see also Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011) ("One method by which a plaintiff can demonstrate an inference of discrimination is to show that the employer treated similarly situated employees more favorably.").

[74] *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (citation modified).

12

Woolf alleges that she and Mr. Clark were similarly situated employees and that Stonehenge treated Mr. Clark more favorably in comparable circumstances.[75] To support her assertion that she and Mr. Clark were similarly situated, Ms. Woolf alleges that they: (1) were in similar levels of management;[76] (2) had similar employment tenure;[77] (3) were both supervised by Ms. Keele, who evaluated their work performance and had the authority to make decisions regarding their employment;[78] (4) were governed by the same employee handbook and had the same standards for performance evaluation and discipline;[79] and (5) were disciplined for conduct of comparable seriousness.[80] As for her assertion of disparate treatment, Ms. Woolf alleges that: (1) Stonehenge offered both she and Mr. Clark a reassignment or a transfer;[81] (2) they each requested reconsideration of Stonehenge's decision;[82] (3) Stonehenge treated Mr. Clark's request for reconsideration as an appeal and permitted him to continue working at the Stonehenge facility where he was currently working under a ninety-day probation period, despite the fact that Stonehenge's employee handbook did not provide for an appeal procedure or a probation

---

[75] ECF No. 28-1 at ¶¶ 99, 111.

[76] *Id*. at ¶ 112(a).

[77] *Id*. at ¶ 112(d).

[78] *Id*. at ¶ 112(b).

[79] *Id*. at ¶ 112(c).

[80] *Id*. at ¶¶ 43-47.

[81] *Id*. at ¶¶ 43-47.

[82] *Id*. at ¶¶ 48-50, 52, 62.

period;[83] and (4) Stonehenge promptly denied Ms. Woolf's request for reconsideration and terminated her employment.[84]

Under a Rule 12(b)(6) analysis, those allegations are adequate to give rise to an inference of discrimination and, therefore, "'nudge [Ms. Woolf's] claim[] across the line from conceivable to plausible.'"[85] Accordingly, the court grants Ms. Woolf's motion as to her proposed claim for sexual discrimination.

## II.    Hostile Work Environment

Permitting Ms. Woolf to assert her proposed claim for hostile work environment would be futile because it would not survive a Rule 12(b)(6) motion to dismiss.[86] "Title VII's prohibition of employment discrimination based on sex encompasses hostile work environment sexual harassment."[87] A plaintiff

> may make out a claim of sex discrimination based on a hostile work
> environment if she can show (1) that she was discriminated against
> because of her sex; and (2) that the discrimination was sufficiently

---

[83] *Id*. at ¶¶ 53-55.

[84] *Id*. at ¶ 63.

[85] *Khalik*, 671 F.3d at 1190 (quoting *Twombly*, 550 U.S. at 570).

[86] Unlike Ms. Woolf's Title VII claim for sexual discrimination, her Title VII claim for hostile work environment is not governed by the burden-shifting framework of *McDonnell Douglas Corp*. *McQueen v. Northrop Grumman Sys. Corp.*, No. CV 19-2743-KHV, 2021 WL 3164855, at *7 n.16 (D. Kan. July 27, 2021) (collecting cases); *see also Jackson v. Kansas City Kansas Pub. Schs. Unified Sch. Dist. No. 500*, 799 F. App'x 586, 590-92 (10th Cir. 2020) (applying the *McDonnell Douglas Corp.* burden-shifting framework to a Title VII retaliation claim but not to a Title VII hostile work environment claim); *Ballage v. Hope & Home*, No. 21-CV-01320-PAB-KMT, 2022 WL 3716519, at *3 n.1 (D. Colo. Aug. 29, 2022) (providing that the *McDonnell Douglas Corp.* burden-shifting "framework does not apply to Title VII hostile work environment claims" (citing *Jackson*, 799 F. App'x at 590-92; *McQueen*, 2021 WL 3164855, at *7 n.16)), *report and recommendation adopted*, No. 21-CV-01320-PAB-MDB, 2022 WL 4290471 (D. Colo. Sept. 16, 2022).

[87] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998).

severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment.[88]

With respect to the first element, "[g]eneral harassment if not . . . sexual is not actionable."[89] "[I]f the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment."[90]

As for the second element, "[p]roof of either severity or pervasiveness can serve as an independent ground to sustain a hostile work environment claim."[91] "[A] sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."[92]

> Thus, [the court] must assess the objective severity of the harassment from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances. In other words, [the court] must look to a totality of the circumstances . . . and consider such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.[93]

---

[88] *Morris v. City of Colorado Springs*, 666 F.3d 654, 663 (10th Cir. 2012) (citation modified).

[89] *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994); *see also Marks v. Sessions*, No. 16-CV-02106-WYD-MEH, 2017 WL 4278498, at *4 (D. Colo. Sept. 27, 2017) ("[G]eneral harassment is not actionable[;] the harassment must be based on . . . sex." (citing *Bolden*, 43 F.3d at 551)).

[90] *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1263 (10th Cir. 2005) (citation modified).

[91] *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1252 (10th Cir. 2021).

[92] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998); *see also Morris*, 666 F.3d at 664 ("A plaintiff must show that the environment was both objectively and subjectively hostile or abusive." (citation modified)).

[93] *Morris*, 666 F.3d at 664 (citation modified); *see also Faragher*, 524 U.S. at 787-88 ("We directed courts to determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." (citation modified)).

"Title VII does not establish a general civility code for the workplace. Accordingly, the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim."[94] "A recurring point" in United States Supreme Court Title VII hostile work environment opinions "is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."[95] "An employer creates a hostile work environment when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[96] The United States Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment."[97]

Allowing Ms. Woolf to assert her proposed claim for hostile work environment would be futile because even if the court assumes for the sake of argument that the alleged discrimination was due to her sex, she has not plausibly alleged that the conduct was severe or pervasive. Importantly, Ms. Woolf identifies only three instances of conduct that she alleges created a hostile work environment: (1) Mr. Clark "spreading serious and false accusations among coworkers, among other things, that Ms. Woolf threatened to kill [Mr. Clark]";[98] (2) "every time Ms. Woolf tried to talk to Ms. Ray, [Ms. Ray] would ignore [Ms. Woolf], turn away, act annoyed,

---

[94] *Morris*, 666 F.3d at 663-64 (citation modified).

[95] *Faragher*, 524 U.S. at 788 (citation modified).

[96] *Morris*, 666 F.3d at 664 (citation modified).

[97] *Faragher*, 524 U.S. at 788.

[98] ECF No. 28-1 at ¶ 81.

or make rude comments to Ms. Woolf to make it clear she did not want to talk to her";[99] and (3) "Ms. Ray refused to tell Ms. Woolf about a patient who was sick with an infection" while Ms. Woolf "was in charge of infection control" at Stonehenge, and that "refusal to communicate made it impossible for Ms. Woolf to effectively do her job and endangered patients in the facility."[100] Beyond those events, Ms. Woolf makes only conclusory allegations. For example, she alleges that: (1) Mr. Clark's conduct was "severe and pervasive enough to damage Ms. Woolf's professional reputation and hinder her from performing her job duties";[101] (2) Mr. Clark's conduct "created tension and hostility in the workplace and caused [Ms. Woolf's] direct supervisors and coworkers to distance themselves from [her] and become hostile toward her";[102] (3) "Ms. Woolf was subject to a hostile work environment based on sex and in retaliation for her complaints of sexual discrimination";[103] and (4) Stonehenge, "acting through Mr. Clark and . . . Ms. Ray, created a retaliatory campaign of isolation and exclusion after Ms. Woolf broke up with Mr. Clark," including "deliberately destroying Ms. Woolf's reputation in the workplace by spreading lies and rumors about her, freezing [her] out of ordinary workplace communications, excluding her from meetings and collaborative work, denying her access to information necessary to perform her duties, and signaling to others that [she] should be avoided."[104]

---

[99] *Id.* at ¶ 87.

[100] *Id.* at ¶ 88.

[101] *Id.* at ¶ 85.

[102] *Id.* at ¶ 86.

[103] *Id.* at ¶ 92.

[104] *Id.* at ¶ 93.

The isolated incidents that Ms. Woolf identifies do not plausibly allege severity or pervasiveness. With respect to severity, as stated above, the United States Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment" and that "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."[105] "Consistent with the Court's direction, in addressing the sufficiency of evidence regarding severity in the work environment[,] [the Unites States Court of Appeals for the Tenth Circuit has] stated that isolated incidents . . . are sufficient to support a hostile work environment claim only when they are threatening and severe or especially egregious or extreme."[106] "Most incidents found to meet this standard involve some kind of physical assault."[107] As for pervasiveness, the Tenth Circuit has held that "isolated incidents of harassment . . . do not constitute pervasive conduct."[108]

From an objective perspective, Ms. Woolf's allegations of a few isolated incidents of conduct fall well short of satisfying those standards for severity and pervasiveness. Furthermore, under a Rule 12(b)(6) analysis, the court is not required to accept as true Ms. Woolf's conclusory allegations about severity and pervasiveness.[109] Because Ms. Woolf fails to plausibly allege

---

[105] *Faragher*, 524 U.S. at 788 (citation modified).

[106] *Brown v. LaFerry's LP Gas Co.*, 708 F. App'x 518, 522 (10th Cir. 2017) (citation modified).

[107] *Id.*

[108] *Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408, 1414 (10th Cir. 1997); *see also Pfannenstiel v. Kansas*, No. 23-3145, 2024 WL 3534142, at *1 (10th Cir. July 25, 2024) ("[A] few isolated incidents of discriminatory conduct does not make the harassment pervasive." (citation modified)).

[109] *Khalik*, 671 F.3d at 1191 ("[I]n examining a complaint under Rule 12(b)(6), [the court] disregard[s] conclusory statements and look[s] only to whether the remaining, factual allegations plausibly suggest the defendant is liable.").

18

severity and pervasiveness, permitting her to assert her proposed claim for hostile work environment would be futile. Therefore, the court denies her motion as to that proposed claim.[110]

## III.    Intentional Infliction of Emotional Distress

Allowing Ms. Woolf to assert her proposed claim for intentional infliction of emotional distress would be futile because it would not survive a Rule 12(b)(6) motion to dismiss. To state a claim for intentional infliction of emotional distress under Utah law, a plaintiff must plausibly allege that: (1) the defendant's conduct was outrageous and intolerable to the point that it offended generally accepted standards of decency and morality; (2) the defendant intended to cause, or acted in reckless disregard of the likelihood of causing, emotional distress; (3) the plaintiff suffered emotional distress; and (4) the defendant's conduct proximately caused the emotional distress.[111] Under the first element,

> [t]o be considered outrageous, the conduct must evoke outrage or revulsion; it must be more than unreasonable, unkind, or unfair. Conduct is not necessarily outrageous merely because it is tortious, injurious, or malicious, or because it would give rise to punitive damages, or because it is illegal. The liability for intentional infliction of emotional distress clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.[112]

In support of the first element of her proposed claim, Ms. Woolf alleges that:

(1) Stonehenge "allowed a serious and false accusation that Ms. Woolf had threatened Mr.

---

[110] Because the court concludes that Ms. Woolf fails to plausibly allege severity or pervasiveness, the court does not reach Stonehenge's arguments that she fails to plausibly allege that any discrimination was due to her sex and that Stonehenge is not subject to employer liability.

[111] *Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 37, 56 P.3d 524, 535.

[112] *Bennett v. Jones, Waldo, Holbrook & McDonough*, 2003 UT 9, ¶ 64, 70 P.3d 17, 32 (citation modified).

Clark's life to circulate among employees even after determining that the allegation could not be substantiated";[113] and (2) Mr. Clark's accusation was "a serious allegation that implied Ms. Woolf had made a threat of lethal violence."[114] Those scant allegations fail to come close to plausibly alleging the first element of a claim for intentional infliction of emotional distress. Therefore, permitting Ms. Woolf to assert her proposed claim would be futile, and the court denies her motion with respect to that proposed claim.

**ORDER**

For the reasons stated above, the court HEREBY ORDERS:

1.   Ms. Woolf's motion for leave to amend her complaint[115] is GRANTED IN PART and DENIED IN PART.

2.   Ms. Woolf's motion is granted with respect to her proposed claim for sexual discrimination.

3.   Ms. Woolf's motion is denied with respect to her proposed claims for hostile work environment and intentional infliction of emotional distress.

4.   On or before July 29, 2026, Ms. Woolf must file an amended complaint containing only her proposed claims for sexual discrimination and retaliation.

---

[113] ECF No. 28-1 at ¶ 125.

[114] *Id*. at ¶ 126.

[115] ECF No. 28.

IT IS SO ORDERED.

DATED this 15th day of July 2026.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge